1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

Civil No. 07cv1607-L(WVG)

11   ANTHONY C. HALBERT,                )
                                        )   **ORDER (1) DENYING DEFENDANT**
12              Plaintiff,              )   **ROGER RODRIGUEZ' MOTION**
                                        )   **FOR SUMMARY JUDGMENT; (2)**
13   v.                                 )   **GRANTING DEFENDANT SAM**
                                        )   **SAMOA'S MOTION FOR**
14   COUNTY OF SAN DIEGO, *et al.*,     )   **SUMMARY ADJUDICATION; (3)**
                                        )   **GRANTING DEFENDANT LESTER**
15              Defendants.            )   **EUGENE DAVIS AND JOE SPINA'S**
                                        )   **MOTION FOR SUMMARY**
16                                      )   **JUDGMENT; AND (4) DENYING**
                                        )   **PLAINTIFF'S MOTION FOR**
17                                      )   **SUMMARY JUDGMENT OR IN**
                                        )   **THE ALTERNATIVE PARTIAL**
18   _____ )   **SUMMARY JUDGMENT**

19          In this civil rights action, Plaintiff alleges that his constitutional rights were violated by

20   several law enforcement officers when he was handcuffed and detained while they were

21   performing a search of a probationer's residence where Plaintiff rented a room.  Defendant

22   Roger Rodriguez filed a motion for summary judgment, Defendant Sam Samoa filed a motion

23   for summary adjudication, and Defendants Lester Eugene Davis and Joe Spina filed a motion for

24   summary judgment.[1]  Plaintiff filed a cross-motion for summary judgment or in the alternative

25

26   _____

27          [1]     Although Defendants Rodriguez, Davis and Spina refer to their respective motions
     as motions for summary judgment, they are construed as motions for summary adjudication, as
28   they do not seek a judgment on the complaint in its entirety, but only adjudication of the claims
     asserted against each of them.

partial summary judgment, which all Defendants opposed.[2]  For the reasons which follow, Defendant Rodriguez' motion for summary judgment is **DENIED**.  The request in his reply brief for summary adjudication of issues is **GRANTED IN PART AND DENIED IN PART**. Defendant Samoa's motion for summary adjudication is **GRANTED**.  The request in his reply brief for summary judgment is **DENIED**.  The motion for summary judgment filed by Defendants Davis and Spina is **GRANTED**.  Plaintiff's cross-motion for summary judgment or in the alternative partial summary judgment is **DENIED**.

    This action arises from the search on August 19, 2005 of a third-party probationer's residence by law enforcement officers associated with the Jurisdictions Unified for Drug and Gang Enforcement (JUDGE) unit, a multi-agency program coordinating enforcement of drug and gang laws.  Seven officers were involved in the search and were named as Defendants in this action:  Sergeant Lester Eugene Davis ("Sgt. Davis"), Detective Joseph Spina ("Det. Spina") and Nicholas Maryn from the San Diego County Sheriff's Department, Detective Roger Ridriguez from the Escondido Police Department ("Det. Rodriguez"), Detective Darren Knox from the San Diego County Probation Department ("Det. Knox"), Detective Sam Samoa from the Oceanside Police Department ("Det. Samoa"), and Agent Glenn Graczyk of the United States Border Patrol ("Agent Graczyk").[3]

    The purpose of the operation was to perform a probation compliance search on Zachary Carpenter, a known gang member with a federal violent crime conviction and a state assault weapons conviction.  Also known to reside at the same address was Joseph Carter, a parolee with an outstanding arrest warrant.

    When Defendants arrived at Mr. Carpenter's residence in the early morning, Mr. Carpenter let them in.  They performed a sweep of the entire building and handcuffed three occupants who were on the premises – Mr. Carpenter, Mr. Carter and Plaintiff.  The occupants

---

    [2]    For the most part, Defendants joined in each other's briefing, including evidentiary objections and responses to Plaintiff's statement of undisputed facts.

    [3]    Defendants Knox and Maryn have been voluntarily dismissed along with the County of San Diego.

1  were kept handcuffed and under guard in the kitchen during the search, which lasted between
2  one and two hours.  Heroin was located in Mr. Carter's room and he was arrested.  Plaintiff and
3  Mr. Carpenter were released after the search was completed.

4      Plaintiff's complaint appears to be based on 42 U.S.C. Section 1983.  "To establish a
5  violation of 42 U.S.C. § 1983, [a plaintiff] must prove that [the defendant]:  (1) acted under color
6  of state law, and (2) deprived [the plaintiff] of [his or her] constitutional rights."  *Dawson v. City*
7  *of Seattle*, 435 F.3d 1054, 1061 (9th Cir. 2006).  Section 1983 applies to Plaintiff's constitutional
8  claims against state law enforcement officers, *i.e.*, all Defendants except for Agent Graczyk, who
9  was a federal agent.

10     In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Supreme
11 Court recognized a damage action against federal agents brought directly under the Constitution.
12 *See also Tekle v. United States*, 511 F.3d 839, 844 (9th Cir. 2007) ("*Bivens* is a judicially created
13 cause of action against federal officers arising under the United States Constitution.").  The
14 complaint is therefore construed as alleging a *Bivens* claim against Agent Graczyk.

15     Plaintiff alleges that his constitutional rights under the Fourth, Fifth and Fourteenth
16 Amendments were violated by the allegedly unlawful search and seizure and Defendants' use of
17 excessive force.  "Where a particular Amendment 'provides an explicit textual source of
18 constitutional protection' against a particular sort of government behavior, 'that Amendment, not
19 the more generalized notion of 'substantive due process,' must be the guide for analyzing these
20 claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994), quoting *Graham v. Connor*, 490 U.S.
21 386, 394 (1989); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  The Fourth
22 Amendment explicitly addresses government searches and seizures.  U.S. Const., amend. IV
23 ("The right of the people to be secure in their persons, houses, papers, and effects, against
24 unreasonable searches and seizures, shall not be violated . . . but upon probable cause . . ..").
25 The Fourth Amendment also "provides an explicit textual source of constitutional protection
26 against . . . physically intrusive government conduct," including excessive force during a search
27 or seizure.  *Graham*, 490 U.S. at 395.  Plaintiff's claims therefore cannot be based on the Fifth
28 Amendment.  *See id*.  By virtue of basing all his arguments on Fourth Amendment

07cv1607

1    jurisprudence, it appears that Plaintiff does not dispute this proposition.  The Fourth Amendment

2    is applicable to the States through the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643

3    (1961).  Accordingly, to the extent Plaintiff alleges a claim for violation of his Fifth Amendment

4    rights, it is **DISMISSED WITH PREJUDICE**.

5         Plaintiff moves for summary judgment arguing that Defendants unlawfully seized,

6    detained and interrogated him, that they used excessive force, and that they detained him for an

7    unreasonable period of time.  When Plaintiff was contacted in the early morning, he was in his

8    room in the basement of Mr. Carpenter's residence wearing only his underwear and a T-shirt.

9    Defendants allegedly pointed their guns at him.  Plaintiff claims that his arms were forcefully

10   brought down and then up behind him for handcuffing, injuring his right shoulder, and that the

11   handcuffs were painfully tight around his wrists.  Plaintiff was escorted upstairs into the kitchen.

12   He claims that the officer escorting him shoved him from behind, causing him to hit his head in a

13   cement overhang, injuring his head and neck.  Plaintiff was detained in the kitchen under guard

14   and handcuffed in his underwear for one to two hours while Defendants completed the search.

15        Defendants contend that several claims on which Plaintiff seeks summary adjudication

16   are not properly before the court because they are not alleged in the Fourth Amended Complaint,

17   the operative complaint in this case.  This is the case with the claims that his room was

18   unlawfully searched and that Defendants failed to give him medical attention.  In his reply

19   Plaintiff argues that he "pled in his Fourth Amended Complaint a cause of action of 'Violation

20   of Civil Rights of Plaintiff Against All Defendants,' [and that] such a cause of action clearly

21   encompasses 'failure to give medical attention' . . .."  (Pl.'s Reply at 7.)  However, to put the

22   defendants on notice, more specificity in pleading is required by Federal Rule of Civil Procedure

23   8(a) than "labels and conclusions" on which Plaintiff now bases these claims.  *See Bell Atlantic*

24   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In contrast, Plaintiff's other theories of liability

25   are at least identified in the complaint.  (Fourth Am. Compl. at 4 ("Defendants and each of them,

26   detained, arrested and interrogated Plaintiff Halbert at gun point [*sic*];" "Defendants and each of

27   them, engaged in the use of excessive and unreasonable force on Plaintiff").

28        Plaintiff also argues that in his interrogatory responses he put Defendants on notice of his

4

claim regarding "Failure to Give Medical Attention." (Pl.'s Reply at 7.)  However, the interrogatory response quoted in the reply brief does not reference Plaintiff's need for medical attention at the time of the incident or indicate whether he requested it.  (*Id.*)  Moreover, the interrogatory response is dated June 19, 2008.  At no time since then has Plaintiff moved to amend his complaint to add the claims for failure to provide medical attention or the unlawful search of his room.  Accordingly, these claims are not before the court in this action.

Plaintiff also seeks summary adjudication on the ground that in addition for being liable for their respective direct personal involvement in violating his constitutional rights, all Defendants are liable based on a collective unit,[4] conspiracy, failure to intercede and supervisory liability theories.  Defendants contend that these theories were not pled in the operative complaint.  However, the Fourth Amended Complaint contains sufficient references to these theories to put them on notice.  (Fourth Am. Comp. at 3 ("acting jointly and in concert with others . . .; . . . authorizing, acquiescing or failing to take action to prevent the unlawful conduct; . . . failing to initiate and maintain adequate supervision; and . . . ratifying the unlawful conduct that occurred by agents and officers under their direction and control").)  Accordingly, these claims are properly before the court.

Defendants further argue that the "collective unit" theory of liability is invalid as a matter of law.  In part, Plaintiff relies on a "collective knowledge" theory, whereby the knowledge of one officer can be imputed to another if the officers act as a team.  (Pl.'s Mem. of P.&A. at 21, citing *United States v. Poe*, 462 F.3d 997, 1001 (8th Cir. 2006), *United States v. Terry*, 400 F.3d 575, 580-81 (8th Cir. 2005 & *United States v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001).)  Imputing liability in civil rights cases to law enforcement officers based solely on their status as team members has been rejected by the Ninth Circuit.  *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 769-70 (9th Cir. 2009).  The "team effort" theory is an improper ground for liability because it "allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would

---

[4]       Plaintiff refers to this theory also as "collective knowledge" and "team effort" theory.

07cv1607

1  nonetheless be found guilty if the conduct was the result of a 'team effort.'" *Chuman*, 76 F.3d at

2  295.  Plaintiff's "collective unit" claim is rejected as a matter of law and is therefore

3  **DISMISSED WITH PREJUDICE**.

4      In his motion for summary judgment, Det. Rodriguez seeks a finding that he did not

5  violate any of Plaintiff's constitutional rights.[5]  Along with other Defendants, Det. Rodriguez

6  was responsible for "sweeping" the residence for potential threats and securing the occupants

7  during the search.  He contacted Plaintiff in or in front of his room in the basement of the

8  residence.  Det. Rodriguez admits briefly pointing his gun at Plaintiff when he was first

9  confronted with him.  He maintains he was the first to contact Plaintiff and that he handcuffed

10  him in the back without the use of unreasonable force.  Det. Rodriguez contends that he only

11  handled Plaintiff's left arm, which did not sustain any injury, that Plaintiff has not identified any

12  physical injury from the act of handcuffing, and that no evidence supports the contention that he

13  caused any of Plaintiff's claimed injuries.  Det. Rodriguez had no further contact with Plaintiff

14  after handcuffing him and was not involved in any other decision regarding Plaintiff.

15      Agent Graczyk does not move for summary adjudication, however, he opposes Plaintiff's

16  summary judgment motion.  During the search he carried a submachine gun and was present

17  when Det. Rodriguez handcuffed Plaintiff.  Agent Graczyk admits that he pointed his gun in

18  Plaintiff's direction, but claims that was his only contact with Plaintiff.

19      Det. Samoa moves for summary adjudication of the issues that he did not arrest Plaintiff

20  and that the duration of Plaintiff's detention was constitutionally reasonable.  According to Det.

21  Samoa, when he arrived in the basement area, Plaintiff was already handcuffed.  Plaintiff was

22  passed to him to be taken upstairs into the kitchen.  Det. Samoa does not seek summary

23  adjudication of Plaintiff's excessive force claim arising out of the allegation that, when escorting

24  him upstairs, Det. Samoa shoved him from behind, causing him to hit his head against a cement

27  [5]    As pertinent here, in his reply brief Det. Rodriguez also requests summary

28  adjudication of the issues that he did not unlawfully detain or arrest Plaintiff, did not use any
excessive force and is not liable for the acts or omissions of other officers.

07cv1607

overhang.[6]  Det. Samoa opposes Plaintiff's motion, however, to the extent it is based on this incident.  Once upstairs, Plaintiff remained handcuffed and was seated in the kitchen under guard until the search was completed.  Det. Samoa remained in the kitchen with the detained occupants and Sgt. Davis for at least a part of that time.

Sgt. Davis and Det. Spina move for summary judgment arguing they were not personally involved in any alleged constitutional violations and are not subject to vicarious liability.  Sgt. Davis was the supervisor of the JUDGE unit.  He did not search the residence, but stayed in the kitchen to guard the detained occupants.  His only physical contact with Plaintiff was to move the handcuffs from the back to the front for comfort.  Det. Spina was the case agent assigned to the operation.  He was responsible for developing the information for the search, briefing the unit members before the search, and assigning duties before and during the search.  He only briefly saw Plaintiff while he was detained in the kitchen.

All Defendants also oppose Plaintiff's contention that they can be held liable for anything other than their respective direct individual actions.  In addition, they argue that to the extent they are not able to show that they did not violate Plaintiff's Fourth Amendment rights, they should be shielded from further litigation based on qualified immunity.

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  "If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue."  Fed. R. Civ. P. 56(d)(1).

Summary judgment or adjudication of issues is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" of material

---

[6]        Det. Samoa requests this ruling in his reply brief.

1  fact arises if "the evidence is such that a reasonable jury could return a verdict for the

2  nonmoving party." *Id.*

3      The burden on the party moving for summary judgment depends on whether it bears the

4  burden of proof at trial.  "When the party moving for summary judgment would bear the burden

5  of proof at trial, it must come forward with evidence which would entitle it to a directed verdict

6  if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial

7  burden of establishing the absence of a genuine issue of fact on each issue material to its case."

8  *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.

9  2000) (citations omitted).  When the moving party would not bear the burden at trial, it can meet

10  its burden by pointing out the absence of evidence with respect to any one element of the claim.

11  *See Celotex*, 477 U.S. at 325.

12      If the movant meets its burden, the burden shifts to the nonmovant to show summary

13  adjudication is not appropriate.  *Celotex*, 477 U.S. at 317, 324.  The nonmovant does not meet

14  this burden by showing "some metaphysical doubt as to material facts."  *Matsushita Elec. Indus.*

15  *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmovant must go beyond the

16  pleadings to designate specific facts showing there are genuine factual issues which "can be

17  resolved only by a finder of fact because they may reasonably be resolved in favor of either

18  party."  *Anderson*, 477 U.S. at 250.

19      When ruling on a summary judgment motion, the nonmovant's evidence is to be believed,

20  and all justifiable inferences are to be drawn in his or her favor.  *Anderson*, 477 U.S. at 255.

21  However, "[w]hen opposing parties tell two different stories, one of which is blatantly

22  contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

23  that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v.*

24  *Harris*, 550 U.S. 372, 380 (2007).  Determinations regarding credibility, the weighing of

25  evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for

26  resolution by the court on summary judgment.  *Anderson*, 477 U.S. at 255.  Only admissible

27  evidence may be considered in deciding a motion for summary judgment.  *See* Fed. R. Civ. P.

28

56(e).[7]

The mere fact the parties filed cross-motions "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). "[E]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must consider evidence submitted in support of and in opposition to both motions before ruling on either one. *Id.* "Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a full and fair opportunity to ventilate the issues involved in the matter." *Gospel Mission of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (internal quotation marks and citation omitted).

Plaintiff contends that he was unlawfully detained and arrested for the duration of the search. It is undisputed that Plaintiff lived in Mr. Carpenter's residence. Mr. Carpenter was on probation based on a judgment entered in state court. (Def. Lester Eugene Davis and Joe Spina's Notice of Lodgment in Supp. of Their Mot. for Summ. J., Ex. ("Davis Ex.") H.) As a condition of probation, Mr. Carpenter waived his Fourth Amendment rights. (*Id.*) "[P]robation conditions are . . . categorically sufficient to justify the invasion of privacy entailed by a home search." *Sanchez v. Canales*, 574 F.3d 1169, 1174 (9th Cir. 2009), citing *Samson v. California*, 547 U.S. 843, 847 (2006). Pursuant to *Muehler v. Mena*, 544 U.S. 93 (2005), "officers may constitutionally detain the occupants of a home during a . . . probation compliance search," *Sanchez*, 574 F.3d at 1173, so long as they have probable cause to believe that the probationer resides at the address, *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005) (*en banc*). It is

---

[7]    The parties filed copious evidentiary objections. For example, Defendants objected to each deposition excerpt filed by Plaintiff arguing it lacked a cover page and did not include the reporter's certification. However, the cover pages were filed with Plaintiff's excerpts and Plaintiff has since filed the reporter's certifications. Accordingly, these objections to Plaintiff's deposition excerpts are overruled. On the other hand, Plaintiff objected to much of Defendants' evidence on the ground that it was "self serving testimony." This objection is overruled because it is not based on the Federal Rules of Evidence. It is a credibility argument that Plaintiff can make to the jury. As to the remaining objections, unless noted otherwise herein, they are overruled.

1    undisputed that Mr. Carpenter resided at the address searched and was at the residence at the

2    time of the search.

3          Furthermore, it is constitutionally reasonable to require all occupants to remain while the

4    officers execute the search.  *Sanchez*, 574 F.3d at 1174, citing *Michigan v. Summers*, 452 U.S.

5    692, 704-05 (1981).  Any such detention of a non-probationer occupant of the residence is not a

6    violation of his or her clearly established constitutional rights.  *Sanchez*, 574 F.3d at 1173.  The

7    officers have authority to detain the occupants during the search "whether or not the occupants

8    appear dangerous," and whether or not the search occurs under particularly risky circumstances

9    – the officers' authority to detain the occupants incident to the search is "categorical."  *Id*. at

10   1173, 1175 & n.4, citing *Muehler*, 544 U.S. at 98.  Plaintiff attempts to distinguish *Muehler* from

11   the present case because the search in *Muehler* was pursuant to a search warrant for the

12   premises, while in the present case the search was pursuant to a probationer's Fourth

13   Amendment waiver.  This argument has been rejected by the Ninth Circuit and is therefore

14   unavailing.  *Sanchez*, 574 F.3d at 1174-75.

15         The duration of the occupants' detention may be coextensive with the search and requires

16   no further justification.  *Dawson*, 435 F.3d at 1066.  In *Muehler*, the detention of occupants in

17   handcuffs for two to three hours was held constitutionally reasonable.  544 U.S. at 100.  Plaintiff

18   does not maintain that he was detained any longer than it took the officers to complete the

19   search.

20         Accordingly, without more, Plaintiff's detention for the duration of the search did not

21   violate his Fourth Amendment rights.  His motion for summary adjudication of this issue is

22   **DENIED**.  Defendants' motions, to the extent they request summary adjudication of this issue,

23   are **GRANTED**.

24         Plaintiff also argues that his Fourth Amendment rights were violated because he was

25   interrogated while detained.  The officers' questioning during detention does not violate the

26   Fourth Amendment.  *Dawson*, 435 F.3d at 1067-68.  In *Muehler*, the Supreme Court made clear

27   that

28         questioning a person whom the police detain incident to a building search does not

10

1
2
3

require independent probable cause because 'mere police questioning does not constitute a seizure.' The Supreme Court rejected the notion that questioning a detainee 'constitute[s] a discrete Fourth Amendment event,' unless the questioning prolongs the detention.

4   *Dawson*, 435 F.3d at 1068, quoting *Muehler*, 544 U.S. at 100-101.  Plaintiff does not maintain

5   that the questioning prolonged his detention.

6         As a matter of law, the interrogation therefore did not violate Plaintiff's constitutional

7   rights.  To the extent Plaintiff seeks summary adjudication of the interrogation claim, his motion

8   is **DENIED**.  Although Defendants do not seek summary adjudication of this issue, Plaintiff had

9   a full and fair opportunity in his motion to "ventilate" it.  *See Gospel Missions*, 328 F.3d at 553.

10  This claim is therefore summarily adjudicated in Defendants' favor.

11        Plaintiff further maintains that Defendants used excessive force when they seized and

12  detained him.  Inherent in the "authorization to detain an occupant of the place to be searched is

13  the authority to use reasonable force to effectuate the detention." *Muehler*, 544 U.S. at 99-100.

14  "[T]he reasonableness of a detention depends not only on *if* it is made, but also on *how* it is

15  carried out.  A detention conducted in connection with a search may be unreasonable if it is

16  unnecessarily painful, degrading, or prolonged." *Meredith v. Erath*, 342 F.3d 1057, 1062 (9th

17  Cir. 2003) (internal quotation marks, brackets and citations omitted, emphases in original).

18        "[U]se of force is contrary to the Fourth Amendment if it is excessive under objective

19  standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), overruled on other

20  grounds by *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808 (2009).  In determining whether the

21  force used was reasonable, the court must balance "the nature and quality of the intrusion on the

22  individual's Fourth Amendment interests against the countervailing governmental interests at

23  stake." *Tekle*, 511 F.3d at 844, quoting *Graham*, 490 U.S. at 396.

24
25
26
27
28

The first factor in determining whether the force used was excessive is the severity of the force applied.  The second factor, and the most important, is the need for the force.  The amount of force used is permissible only when a strong government interest compels the employment of such force.  Factors to be considered in determining the need for the force include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  Finally, [the court] must balance the force used against the need, to determine whether the force used was greater than is reasonable under the

1
2
3
4

circumstances.  This determination requires careful attention to the facts and circumstances of each particular case and a careful balancing of an individual's liberty with the government's interest in the application of force.  Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly.  This is because police misconduct cases almost always turn on a jury's credibility determinations.

5 *Id*. at 844-45 (internal quotations marks and citations omitted).

6 Plaintiff makes four arguments regarding the excessive use of force when he was seized

7 and detained.  He argues that it was unreasonable to (1) handcuff him at gunpoint; (2) handcuff

8 him in a painful manner by forcefully pulling his arms down behind him and them shoving his

9 hands upward and by applying the handcuffs too tightly; (3) shove his head into a cement

10 overhang; and (4) detain him in handcuffs for one and a half to two hours.

11 First, Plaintiff contends that Defendants used excessive force because he was handcuffed

12 at gunpoint.  "[P]ointing of a gun at someone may constitute excessive force, even if it does not

13 cause physical injury."  *Tekle*, 511 F.3d at 845, citing *Robinson v. Solano County*, 278 F.3d

14 1007, 1014-15 (9th Cir. 2002) (*en banc*); *see also id.* at 847.  In *Robinson*, the court found that

15 officers who pointed guns at a non-threatening suspect, handcuffed him and detained him for 15

16 to 30 minutes, could be held liable for a Fourth Amendment violation because the use of guns

17 and handcuffs must be justified by the circumstances.  278 F.3d at 1014.

18 Det. Rodriguez admits to briefly pointing his semi-automatic pistol at Plaintiff when he

19 was initially confronted with him in the dark basement area of the residence.  (Dec. of Def.

20 Roger Rodriguez in Supp. of Mot. for Summ. J. ("Rodriguez Decl.") at 3, 4.)  Agent Graczyk,

21 who carried a submachine gun, admits pointing it in Plaintiff's direction before and during the

22 handcuffing.  (Deposition of Glenn Graczyk ("Graczyk Depo.") at 33, 61, 62, 84-85, 95, 103-

23 04.)

24 Where an operation is considered inherently dangerous because it involves a search for

25 weapons at a residence of known gang members, it is reasonable to handcuff an occupant at

26 gunpoint.  *Muehler*, 544 U.S. at 99, 100.  Plaintiff claims that his Fourth Amendment rights were

27 violated because the search of Mr. Carpenter's residence was not inherently dangerous.

28 The "'reasonableness' of a particular use of force must be judged from the perspective of

07cv1607

1  a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Jackson v.*

2  *City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).  The court therefore considers the facts

3  known to Defendants at the time of the incident.

4        In the process of preparing the operation, Det. Spina researched Mr. Carpenter's criminal

5  and gang background.  (Deposition of Joseph Spina ("Spina Depo.") at 20-21.)  He also learned

6  that Mr. Carter resided at Mr. Carpenter's residence and that Mr. Carter was a parolee with an

7  outstanding arrest warrant.  (*Id.* at 20-21, 42.)

8        Mr. Carpenter had a June 2, 2005 federal conviction for violating 18 U.S.C. Section

9  1959(a)(6) (Violent crimes in aid of racketeering activity, specifically "attempting or conspiring

10  to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in

11  serious bodily injury").  (Davis Ex. K.).  On July 12, 2005 he was placed on probation in state

12  court for violating California Penal Code Section 12280 (Manufacture, distribution,

13  transportation, importation, sale, possession, or lending of assault weapon or .50 BMG rifle).

14  (Notice of Lodgment of Docs in Supp. of Def. Roger Rodriguez' Mot. for Summ. J. Ex.

15  ("Rodriguez Ex.") C (Spina Depo. Ex. 95).)  Furthermore, Mr. Carpenter was a known gang

16  member.  (Deposition of Hollis Jones at 8, 36-37; Spina Depo. at 65-66.)[8]

17        As to Mr. Carter, Det. Spina ran his criminal history (Spina Depo. at 30) and learned he

18  was on parole and had an outstanding arrest warrant (*id.* at 20-21, 42).[9]  In addition, Det. Spina

19  was aware of Mr. Carter from personal experience.  (*Id.* at 39, 66.)  When Det. Spina worked

20  patrol in Encinitas, Mr. Carter was arrested several times on drug charges.  (*Id.* at 66.)  He was

21  known as a dangerous person because of his drug use, unpredictability, large size and propensity

22  for violence during arrest.  (*Id.* at 66-67, 91.)

23        Based on the information he had about Messrs. Carpenter and Carter, Det. Spina

24

25      [8]   Hollis Jones was a deputy probation officer at the adult gang suppression unit at
the San Diego County Probation Department.  (Jones Depo. at 6.)  He was Mr. Carpenter's

26  probation officer at the relevant time.  (*Id.* at 7-8.)  Mr. Carpenter was a member of the Hells
Angels motorcycle gang.  (*Id.* at 8, *see also id.* at 36-37.)  In preparing the operation, Det. Spina

27  spoke to Deputy Jones.  (Spina Depo. at 30-31.)

28      [9]   The warrant was for violation of California Health and Safety Code Section
11377(a), a misdemeanor drug possession charge.  (Davis Ex. L at 4.)

07cv1607

1   determined that this would be a relatively high risk operation and requested additional backup.

2   (*Id*. at 89, 92-93.)  As a result, additional law enforcement officers who were not members of the

3   JUDGE unit were involved in the search, bringing the total number of officers involved to

4   between 10 and 12.  (Spina Depo. at 92-93.)

5         Before the search, Det. Spina briefed Defendants about Messrs. Carpenter and Carter's

6   criminal records and his experience with Mr. Carter.  (Deposition of Lester Davis ("Davis

7   Depo.") at 14; Rodriguez Decl. at 2; Deposition of Samoa Samoa ("Samoa Depo.") at 26-29 &

8   47-48; Graczyk Depo. at 33-34, 38-39.)  He told the officers that the purpose of the operation

9   was to perform a compliance search on Messrs. Carpenter and Carter and enforce the

10   outstanding arrest warrant on Mr. Carter.  (Spina Depo. at 38, 42-43; Graczyk Depo. at 57.)  The

11   officers concluded that this would not be an ordinary search but a search that involved gang

12   members with violent criminal records, including charges based on assault weapons.

13         Plaintiff argues that this was not a reasonable belief because he was present on a couple

14   of occasions before the incident, when Mr. Carpenter's federal probation officer Lisa Coen

15   conducted a compliance visit by herself.  (*See* Deposition of Anthony C. Halbert ("Halbert

16   Depo.") at 52-53.)  However, Plaintiff presents no evidence or argument to indicate whether

17   Defendants knew before the search of Ms. Coen's experience when visiting Mr. Carpenter,

18   whether Mr. Carter resided at Mr. Carpenter's residence at the time of her visits, or whether she

19   was aware of Mr. Carter's background.  Plaintiff therefore does not raise a genuine issue of fact

20   whether the search was inherently dangerous.

21         Based on undisputed evidence regarding Defendants' knowledge before the search, the

22   relevant circumstances of this case are similar to those in *Mena v. Muehler*, where the court

23   concluded that a search for weapons at a residence of known gang members was inherently

24   dangerous.  544 U.S. at 99, 100.  *Muehler* held that it was constitutionally reasonable to

25   handcuff an occupant at gunpoint in these circumstances.  *Id*.  Plaintiff does not maintain that

26   guns were pointed at him at any time after he was handcuffed.

27         Accordingly, no Fourth Amendment violation resulted from handcuffing Plaintiff at

28   gunpoint.  To the extent Plaintiff requests summary adjudication of the excessive force claim

07cv1607

1   arising solely from the fact that guns were pointed at him when he was handcuffed, his motion is

2   **DENIED**.  Because Plaintiff had a full and fair opportunity to "ventilate" this issue, the claim is

3   adjudicated for Defendants.

4           Second, Plaintiff seeks summary adjudication of the excessive force claim based on the

5   manner in which he was handcuffed.  He claims that his right arm was forcefully pulled down

6   behind his back and then up behind him, causing a rotator cuff tear in his right shoulder, and that

7   the handcuffs were painfully tight.  Applying handcuffs in an abusive manner or overly tightly

8   can constitute excessive force.  *Hansen v. Black*, 885 F.2d 642, 643 (9th Cir. 1989) (abusive

9   application); *Meredith*, 342 F.3d at 1063 (abusive application, overly tight handcuffing).

10          Det. Rodriguez argues that he is not liable for excessive force associated with

11   handcuffing.  He claims Plaintiff admitted that he did not handle Plaintiff's right arm, that there

12   is no evidence handcuffing caused Plaintiff's claimed shoulder injury, and that Plaintiff's wrists

13   were not injured at all.  Agent Graczyk opposes Plaintiff's summary judgment motion based on

14   the argument that he did not have any physical contact with Plaintiff.  (Graczyk Depo. at 62, 93-

15   94.)  It is undisputed that Det. Rodriguez handcuffed Plaintiff,[10] and that at least Agent Graczyk

16   and Det. Knox were present at that time.

17          Plaintiff disputes that he admitted Det. Rodriguez did not handle his right arm.  Det.

18   Rodriguez' admission argument rests primarily on his belief that Plaintiff identified him as the

19   officer who first made contact with Plaintiff at the door to his room.  (Rodriguez Decl. at 4.)  He

20   focuses on the identification because he claims that Plaintiff also testified that the first officer at

21   the door did not handle his right arm.  In support of this argument, Det. Rodriguez offers

22   snippets of Plaintiff's deposition testimony.  (Rodriguez Mem. of P.&A. at 18-20.)  However,

23   upon review of all the excerpts of Plaintiff's testimony about handcuffing, it is apparent that

24   Plaintiff was not certain about Det. Rodriguez' identification or about who handled his right arm.

25

26   _____

27          [10]     Plaintiff's argument that Det. Rodriguez "is not competent" to testify about
     handcuffing because his position on this issue changed in the course of discovery is irrelevant
28   for purposes of this motion.  This is a matter of credibility which is not appropriate for
     consideration on summary judgment.  *See Anderson*, 477 U.S. at 255.

When he was first contacted, Plaintiff stood inside his room with the door cracked open a little. (Halbert Depo. at 182-83.) One officer identified the group as police and asked Plaintiff if he was on parole or probation, whether anyone else was in the room and whether they could come in. (*Id*. at 182-88.) Plaintiff described the first officer at the door as "a guy with camouflage or . . . a vest . . . with "dark hair," "maybe as tall as" Plaintiff, "wide – muscular, a little bit," and "might have been a Hispanic."[11] (*Id*. at 183, 205.) According to Det. Rodriguez, this is his description. (Rodriguez Decl. at 4.) However, Plaintiff qualified the description because the officer stood in the dark. (Halbert Depo. at 182-83, 193-94.) After persistent questioning about the description of the officer who first contacted him and the mechanics of how the officers entered Plaintiff's room, Plaintiff testified that he did not have a detailed recollection. (*Id*. at 187; *see also id.* at 185-86.)

More importantly, even if Det. Rodriguez is the officer who first contacted Plaintiff at the door to his room, Plaintiff's testimony about which officer handled which arm is similarly qualified. The whole incident from the contact to handcuffing happened very quickly, in a "dramatic" fashion, and Plaintiff could not recall the specifics of which officer did what. (*Id*. at 221, 222; *see also id.* at 190, 227.)

Plaintiff responded to Defendants' questions and told them he was not on parole or probation, that no one was in the room with him and he did not consent to the officers entering his room. (Halbert Depo. at 185, 186-87, 188.) As soon as he asked to see a warrant, the officers burst in, including an officer with a machine gun pointed at Plaintiff.[12] (*Id*. at 190-91, 193.) Plaintiff was not sure which officer entered first. (*Id*. at 196.) After that, Plaintiff kept his eyes on the machine gun rather than the officers' faces. (*Id*. at 196-97, 209.) The other officers were "yanking [him] all over the place" and telling him to turn around. (*Id*. at 193, 210, 219-20.) The officer with the machine gun was "hopping" or "running around." (*Id*. at 210, 215, 226-27.)

---

[11]    Plaintiff was not able to refer to Defendants by their names because the officers did not identify themselves to Plaintiff at any time. (Halbert Depo. at 205, 208.)

[12]    In his deposition, Plaintiff refers to Agent Graczyk as the officer with the machine gun. (*See* Graczyk Depo. at 61-62, 95, 103-04.)

Plaintiff could not describe the location of each officer.  (*Id*. at 218-19, 220, 221, 236.)  He was told to put his hands up and did so.  (*Id*. at 209, 219 224; *see also id*. at 190, 201.)  Then he was told to put his arms behind his back, and someone "yanked" his right arm "real hard."  (*Id*. at 220-22.)  He was not sure who handled his arms first or who handled his right arm, because "[i]t was from behind."  (*Id*. at 210; *see also id*. at 221, 224.)  Although Plaintiff testified that he did not think that the officer who first arrived at his door was "yanking" his right arm (*id*. at 222, 225-26, 239), he was not sure of this because it happened behind him and he could not see (*id*. at 239).

Based on the foregoing, the issue whether Det. Rodriguez handled Plaintiff's right arm turns in large part on credibility.  A jury could believe Det. Rodriguez' testimony that he did not do it; on the other hand, the jury could just as reasonably believe Plaintiff that he could not say who handled his right arm, because the officers were behind him and because of the stress and confusion of the situation.

If Plaintiff's testimony is believed, the fact that he did not see the officers handcuffing him behind his back and could not testify which officer did what is not fatal to his claim.  "Whether or not the evidence in the record establishes liability on the part of the defendants depends on the resolution of disputed questions of fact and determinations of credibility, as well as on the drawing of inferences, all of which are manifestly in the province of a jury."  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  A jury's finding for the plaintiff in an excessive force case "may unquestionably rest on inferences drawn from circumstantial evidence."  *Id*.

For example, in *Rutherford v. City of Berkeley*, 780 F.2d 1444 (9th Cir. 1986),[13] the plaintiff could not specifically state as to three officers whether they punched or kicked him, but he testified that "they were among the five or six officers who were surrounding him while he was beaten and that he saw each of their faces while he was being beaten.  [The three officers] agreed that they were among the five or six officers who detained, arrested and handcuffed [the plaintiff], but denied punching or kicking [him]."  *Id*. at 1448.  The court held that "[f]rom this

---

[13]     Reversed on other grounds by *Graham v. Connor*, 490 U.S. 386 (1989); *see Santos*, 287 F.3d at 852 n.6.

07cv1607

1   evidence, a jury could reasonably infer that the named officers were participants in punching or

2   kicking [the plaintiff]." *Id*. Based on the record in this case, there is sufficient evidence that a

3   reasonable jury could infer that Det. Rodriguez participated in handling Plaintiff's right arm.

4      Moreover, regardless of whose testimony is believed,

5      An officer's liability under section 1983 is predicated on his 'integral
       participation' in the alleged violation. Integral participation does not require that
6      each officer's actions themselves rise to the level of a constitutional violation.

7   *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2009) (internal quotation marks

8   and citations omitted). Assistance in handcuffing which is instrumental in gaining control of a

9   suspect constitutes integral participation sufficient to impose liability for use of excessive force

10  in handcuffing. *Id*. It is undisputed that Det. Rodriguez not only assisted in handcuffing

11  Plaintiff but is the officer who handcuffed him. Accordingly, if the jury determines that

12  excessive force was used in handcuffing Plaintiff, Det. Rodriguez was an integral participant,

13  even if he did not handle Plaintiff's right arm and his own conduct did not amount to excessive

14  force. *See id*.

15     Det. Rodriguez also argues that Plaintiff's excessive force claim should fail because there

16  is no evidence that the handcuffing caused Plaintiff to suffer a torn rotator cuff as he claims.

17  This argument is based on the premise that in order to prevail on a claim for excessive force, a

18  plaintiff must have sustained a physical injury. Physical injury is not one of the elements of a

19  section 1983 claim. *See Dawson*, 435 F.3d at 1061; Ninth Cir. Model Jury Instr. 9.2 & 9.22.

20  For example, pointing a gun and causing the suspect to "fear for [his] life" or causing

21  unnecessary pain may be sufficient in some cases. *See Robinson*, 278 F.3d at 1013-14 (gun

22  pointing); *see also Meredith*, 342 F.3d at 1063 (unnecessary pain). The relevant inquiry is

23  whether the use of force was reasonable under the circumstances. *Robinson*, 278 F.3d at 1013-

24  14; Ninth Cir. Model Jury Instr. 9.22. Under this analysis, "the intrusion [on a person's liberty]

25  may be substantial even though the injuries are minor." *Santos*, 287 F.3d at 855.

26     Defendants' reliance on *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d

27  912 (9th Cir. 2001), is misplaced. Summary judgment for the defense was not based solely on

28  the plaintiff's failure to support her claim of injury with medical records. *Id*. at 922. It was

based on her failure to support with "factual data" her conclusory statement that she did not resist arrest in face of the defendant's detailed description of how she did. *Id*. at 921-22. *Arpin* does not stand for the proposition that in order to prevail on a claim of excessive force, a plaintiff must prove a physical injury with medical records.

Defendants also argue that the declaration of Plaintiff's expert John Brault, MS is insufficient to show causation, *i.e.*, that the handcuffing caused a rotator cuff tear in Plaintiff's right shoulder.[14] As discussed above, a physical injury is not necessarily required to prevail on an excessive force claim. However, if Plaintiff intends to recover damages based on his shoulder injury, he must prove that it was caused by Defendants. Based on Plaintiff's account of the handcuffing incident, Mr. Brault opined that the manner in which Plaintiff's arms were handled is "highly consistent . . . with a rotator cuff tear." (Decl. of John Brault, MS at 2.)  In *Santos v. Gates*, expert testimony that "the injuries could . . . be consistent with [the plaintiff's] having been violently shoved to the ground" was not found insufficient. 287 F.3d at 852.  The court held that it could support a jury's finding that the officers' conduct caused the plaintiff's injury. *Id*.

If the jury believes Det. Rodriguez that the handcuffing did not cause a rotator cuff tear as Plaintiff contends, the jury could still find that it was unduly painful. Plaintiff yelled in pain. (Halbert Ex. 24 (Resp. to Special Interrogs. at 8).)  He felt pain in his shoulder and heard a crack or pop. (Halbert Depo. at 232.)  The shoulder felt like "it popped out of the socket." (*Id*.)  Later, when he was brought into the kitchen, Plaintiff complained of the pain, and was re-cuffed in front. (*Id*. at 233-34, 250.)  He could not move his right arm from back to front without assistance, and moving the arm forward was painful. (*Id*. at 233-34.)  The shoulder "popped back in," when the arm was moved forward. (*Id*.)  If Plaintiff's testimony is believed, the handcuffing was very painful. In some cases, this is sufficient to prevail on an excessive force claim. *See Meredith*, 342 F.3d at 1063.

---

[14]    Defendants' objections to Mr. Brault's declaration are overruled.  Mr. Brault lectures at the Department of Biokinesiology and Physical Therapy at the University of Southern California.  His lectures include anatomy and biomechanics of shoulder injuries.  (Decl. of John Brault, MS at 1.)

1    Det. Rodriguez also argues that he should not be held liable because Plaintiff was not

2    injured from the handcuffs being applied too tightly.  Although Plaintiff is not claiming any

3    physical injury to his wrists (Halbert Depo. at 656), he contends that the handcuffs were too tight

4    and caused him pain.  When he was brought to the kitchen, he complained to Sgt. Davis, "These

5    handcuffs are killing me."  (*Id*. at 250.)  According to Plaintiff, he was handcuffed in the back

6    for 45 minutes to an hour before the was re-cuffed in the front.  (*Id*. at 251.)  Placing an occupant

7    into painfully tight handcuffs can constitute excessive force.  *Meredith*, 342 F.3d at 1063.  The

8    lack of a physical injury to Plaintiff's wrists is therefore not fatal to his excessive force claim.

9    In determining whether the force used in handcuffing Plaintiff was constitutionally

10   reasonable, the court considers the severity of the force applied and the need for the force.

11   *Tekle*, 511 F.3d at 844.  In *Meredith v. Erath*, an occupant of searched premises, who was not a

12   target of the search, was thrown to the ground, her arms were twisted, and she was handcuffed

13   after repeatedly demanding to see the warrant.  342 F.3d at 1059, 1060.  She claimed that the

14   force applied was excessive.  *Id*. at 1059, 1060.  The court found that, if the plaintiff's version of

15   the events was believed, a reasonable jury could find the use of force objectively unreasonable.

16   *Id*. at 1061.  The plaintiff, although loudly asking to see the warrant and passively resisting, did

17   not pose a safety risk or attempt to flee, and the search was related to an income tax crime.  *Id*.

18   The court held that the defendant was not entitled to qualified immunity on summary judgment.

19   *Id*. at 1061. The court also held that placing and keeping the plaintiff in handcuffs that were so

20   tight that they caused unnecessary pain for 30 minutes, as the plaintiff claimed, was objectively

21   unreasonable under the Fourth Amendment, and that the defendant was not entitled to qualified

22   immunity.  *Id*. at 1063.

23   Plaintiff claims that the officers forcefully "yanked" his right arm down behind him and

24   then shoved his hands up, causing him to yell in pain and tearing a rotator cuff.  The handcuffs

25   were then applied so tightly that they were "killing him."  Plaintiff remained tightly handcuffed

26   behind his back for 45 minutes to one hour.  In considering the need for the force, it is

27   undisputed that the officers were on the premises expecting to encounter two dangerous

28   individuals and did not know who Plaintiff was when they handcuffed him.  Because of this, at

07cv1607

1   least two officers, Det. Rodriguez and Agent Graczyk, had their weapons drawn when they

2   encountered Plaintiff.  Plaintiff was in a T-shirt and underwear (Graczyk Depo. at 70; Halbert

3   Depo. at 191; Davis Depo. at 31), and was therefore unlikely to be concealing a weapon.

4   Although Plaintiff demanded to see a warrant and did not consent to Defendants entering his

5   room, he did not resist them.  He complied with the orders to raise his hands above his head, did

6   not advance toward Defendants, and did not attempt to flee.

7        If Plaintiff's version of the handcuffing is believed, a reasonable jury could find that in

8   these circumstances, it was objectively unreasonable for the officers to violently handle

9   Plaintiff's arms in handcuffing him and apply the handcuffs so tightly as to cause unnecessary

10  pain for 45 minutes to an hour.  *See, e.g., Meredith*, 342 F.3d at 1059-63 *passim*.  Plaintiff was

11  therefore successful in raising a genuine issue of fact regarding the reasonableness of the force

12  used when he was handcuffed.

13       Defendants contend that if Plaintiff can show that excessive force was used when he was

14  handcuffed, qualified immunity should apply to shield them from further litigation.

15           The qualified immunity analysis involves two separate steps.  First, the court
             determines whether the facts show the officer's conduct violated a constitutional
16           right.  If the alleged conduct did not violate a constitutional right, then the
             defendants are entitled to immunity and the claim must be dismissed.  However, if
17           the alleged conduct did violate such a right, then the court must determine whether
             the right was clearly established at the time of the alleged unlawful action.  A right
18           is clearly established if a reasonable official would understand that what he is
             doing violates that right.  If the right is not clearly established, then the officer is
19           entitled to qualified immunity.

20  *Hopkins*, 573 F.3d at 762 (internal quotation marks and citations omitted).  The order in which

21  these questions are addressed is left to the court's discretion.  *Pearson*, 129 S. Ct. at 818.

22       As discussed above, if Plaintiff's version of events is believed, a reasonable jury could

23  find that excessive force was applied in violation of Plaintiff's Fourth Amendment rights.  The

24  Fourth Amendment standard of excessive force generally, and as it applies to abusive or tight

25  handcuffing specifically, was clearly established as of August 19, 2005.  *See Hansen*, 885 F.2d

26  at 643; *Meredith*, 342 F.3d at 1061-63.  Furthermore, "[t]he proposition that police may not

27  inflict pain on non-suspects detained during a search, in the absence of any law enforcement

28  reason, should be so obvious to reasonable officers that qualified immunity cannot shield them.

07cv1607

A policeman ought to know that he is not constitutionally entitled to hurt people for no reason." *Tekle*, 511 F.3d at 860 (Kleinfeld, J., concurring), citing *Meredith*, 342 F.3d at 1061.  Based on the foregoing, Det. Rodriguez' motion for summary adjudication of the excessive force claim arising from the handcuffing incident is denied.

Plaintiff argues that the court should summarily adjudicate the claim in his favor.  The court disagrees.  Defendants presented sufficient evidence to raise a genuine issue of fact whether the force used was reasonable under the circumstances.  According to Defendants' evidence, the only officers in the basement area when Plaintiff was handcuffed were Det. Rodriguez, Det. Knox and Agent Graczyk.  (Rodriguez Decl. at 4.)  Det. Rodriguez did not forcefully bring Plaintiff's arms down behind him and then up.  (*Id.*)  Det. Knox did not see any physical violence being exercised on Plaintiff and did not observe Det. Rodriguez using any force on Plaintiff other than "general handcuffing."  (Deposition of Darrin Knox ("Knox Depo.") at 97, 113.)  Agent Graczyk did not touch Plaintiff at all.  (Graczyk Depo. at 62, 93-94.)  Furthermore, when Defendants contacted Plaintiff, he was angry, verbally abusive, did not comply with their commands and presented a threat to their safety.  (Graczyk Depo. at 70, 71, 78-79, 83-84, 109; Deposition of Roger Rodriguez at 42-43, 48-49.)  If Defendants' evidence is believed, a jury could conclude that the use of force was reasonable under the circumstances.  Accordingly, Plaintiff's motion for summary adjudication of the excessive force claim arising from the manner in which he was handcuffed is denied.

Based on the foregoing analysis, there is a genuine issue of fact regarding the severity and the need for the force applied during the handcuffing incident.  Because Plaintiff argues that all Defendants should be held liable, the court examines the role of each Defendant in the handcuffing incident.

Plaintiff claims that all Defendants were integral participants in the violation of his constitutional rights.  This assertion is based on an overly broad reading of *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  (*See* Pl.'s Reply at 3-4.)  In *Boyd*, the court found there was a genuine issue of material fact whether excessive force was used upon entry into a residence to conduct a search because the entry was accomplished by deploying a flash-bang

07cv1607

device. *Id.* at 779.  The court also found that all officers who participated in the search were integral participants in the use of force not only because they stood armed behind the officer who deployed the device, but because they were briefed prior to the operation that the device would be used, did not object to it, and then participated in the search knowing that the device would be used.  *Id.* at 780.  Unlike in *Boyd*, in this case Plaintiff presents no evidence that there was a plan to use excessive force or that Defendants knew before the search that excessive force would be used.  Plaintiff's blanket assertion that all Defendants were integral participants is rejected.

As discussed above, Det. Rodriguez' participation was integral to the handcuffing.  It is undisputed that Agent Graczyk was present and provided security with his weapon during the handcuffing.  Officers who provide armed backup during an operation where excessive force is used are considered integral participants.  *Boyd*, 374 F.3d at 780.  Therefore, Agent Graczyk was an integral participant.

With respect to Det. Samoa, Plaintiff testified that he was entering the room and helping as Plaintiff was being handcuffed.  (Halbert Depo. at 227.)[15]  While he was being handcuffed, Plaintiff asked the officers if he could put his pants on.  (*Id.* at 229.)  His request was denied, and his hands were shoved upward behind him and he was pointed toward the door.  (*Id.*)  Plaintiff testified that his hands were shoved up by Det. Samoa.  (*Id.*)  Det. Samoa testified that he was not present when Plaintiff asked to put on his pants, that Plaintiff was handed over to him already in handcuffs and that he simply accompanied him upstairs.  (Samoa Depo. at 55-56, 58, 67-68, 70-71, 72.)  Accordingly, whether Det. Samoa shoved Plaintiff's hands up behind him is a genuine issue of fact.  If the jury finds that Plaintiff was handcuffed with excessive force, the jury also could reasonably conclude that Det. Samoa was involved in causing Plaintiff's injury or pain associated with the handcuffing, and that he therefore acted as an integral participant.

It is undisputed that Det. Spina and Sgt. Davis were not present during any stage of the handcuffing incident.  Plaintiff presents no evidence to suggest that Det. Spina or Sgt. Davis

---

[15]     In his deposition, Plaintiff refers to Det. Samoa as the "big" or "large" officer. (*See* Halbert Depo. at 227, 229.)  It is apparent that this is a reference to Det. Samoa, because he is the officers who escorted Plaintiff to the kitchen.  (*Id.* at 229; Samoa Depo. at 59, 72.)

07cv1607

1    were consulted before Plaintiff was handcuffed or that they instructed Det. Rodriguez, Agent

2    Graczyk or Det. Samoa to handcuff him.  Accordingly, they cannot be held liable under the

3    integral participant theory.  *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir.

4    2008).

5         Plaintiff also seeks a finding of liability against all Defendants based on their failure to

6    intercede.  Law enforcement officers have a duty to intercede when their fellow officers violate

7    the constitutional rights of a suspect or other citizen.  *Cunningham v. Gates*, 229 F.3d 1271,

8    1289 (9th Cir. 2000).  However, "officers can be held liable . . . only if they had an opportunity

9    to intercede."  *Id*.  Officers who were not present at the time of the incident do not have an

10   opportunity to intercede.  *Id*. at 1290.  Det. Spina and Sgt. Davis therefore cannot be held liable

11   under this theory.  It is undisputed that Det. Rodriguez and Agent Graczyk were present during

12   the entire incident.  They do not maintain that they did not see how Plaintiff's arms were handled

13   or that they did not have a realistic opportunity to intercede.  Accordingly, if the jury finds that

14   excessive force was used, they can be held liable on the alternative ground of failure to

15   intercede.  Because Det. Samoa was present only toward the end of Plaintiff's handcuffing, there

16   is a genuine issue of material fact whether he was present at the time when he could intercede.

17        Finally, Plaintiff argues that Sgt. Davis and Det. Spina should be held liable in their

18   respective supervisory capacities.  It is undisputed that Sgt. Davis was in charge of the JUDGE

19   unit's day to day operations, that Det. Spina was the case agent in charge of the search who

20   assigned duties to individual officers, and that both participated in the search itself.

21        Defendants acting in a supervisory role cannot be held liable based on vicarious liability

22   unless vicarious liability is imposed by state law.  *Redman v. County of San Diego*, 942 F.2d

23   1435, 1446 (9th Cir. 1991).  Plaintiff does not claim that state law provides for vicarious liability

24   in this case.  In the absence of vicarious liability, a defendant in a supervisory capacity can be

25   held liable only for his personal role in the alleged constitutional deprivation.  *Id*.  A supervisory

26   defendant can be held liable based on any of the following theories: (1) directing subordinates in

27   the acts which deprived the plaintiff of constitutional rights; (2) setting in motion a series of acts

28   by subordinates that the supervisor knew or reasonably should have known would cause the

1    constitutional deprivation; or (3) failure to prevent subordinates from engaging in certain

2    conduct when the supervisor knows or reasonably should have known that subordinates were

3    engaging the conduct and that the conduct would deprive the plaintiff of constitutional rights.

4    Ninth Cir. Jury Instr. 9.3.

5        In support of their motion for summary judgment, Sgt. Davis and Det. Spina argue that

6    neither of them personally violated Plaintiff's constitutional rights, directed any officers to cause

7    a violation of Plaintiff's constitutional rights, and that, to the extent other Defendants violated

8    Plaintiff's rights, the conduct occurred in a matter of seconds and where Sgt. Davis and Det.

9    Spina were not present, which deprived them of any opportunity to intercede.

10        Plaintiff argues that Sgt. Davis and Det. Spina should be held liable because they made

11   the search possible.  He does not present any evidence or argument that Sgt. Davis or Det. Spina

12   directed the use of excessive force.  That they made the search possible is insufficient to justify

13   liability.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff also presents no

14   evidence in support of any inference that they knew or should have known that the search would

15   result in the use of excessive force, or that they knew or should have known at the relevant time

16   that any officers were using excessive force.  Plaintiff has therefore not met his burden as the

17   moving party with respect to an issue on which he will have the burden of proof at trial.  *See*

18   *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480.  Accordingly, to the extent the jury finds that

19   excessive force was applied in handcuffing Plaintiff, neither Sgt. Davis nor Det. Spina can be

20   held liable in their respective supervisory capacities.

21        As noted above, there is a genuine issue of fact regarding the severity and the need for the

22   force applied during the handcuffing incident.  To the extent either Plaintiff or Det. Rodriguez

23   seek summary adjudication of the excessive force claim arising from the handcuffing incident,

24   their motions are **DENIED**.  If the jury finds that excessive force was used, Det. Rodriguez and

25   Agent Graczyk were integral participants, or in the alternative, failed to intercede in the use of

26   excessive force.  There is a genuine issue of fact whether Det. Samoa was an integral participant

27   or failed to intercede in the use of excessive force.  There is no genuine issue of fact whether

28   Sgt. Davis or Det. Spina could be held liable for any use of excessive force in handcuffing

07cv1607

1    Plaintiff.  To the extent their motion seeks summary adjudication of the excessive force claim

2    arising from the manner in which Plaintiff was handcuffed, their motion is **GRANTED**.

3           Third, Plaintiff moves for summary adjudication of the claim that Det. Samoa used

4    excessive force when he escorted Plaintiff, handcuffed behind his back, from the basement area

5    upstairs into the kitchen.  Plaintiff claims that as they were walking up the steps, Det. Samoa

6    shoved him, causing his head to hit a cement overhang.  (Halbert Depo. at 287-89.)  Det. Samoa

7    points to evidence to the contrary.  He testified that he did not touch Plaintiff and did not see him

8    hit his head.  (Samoa Depo. at 58-59.)  Based on the foregoing, there is a genuine issue of fact

9    whether Det. Samoa used any force against Plaintiff as he was escorting him upstairs.  Plaintiff's

10   motion is therefore denied.

11          In his opposition to Plaintiff's motion, Det. Samoa argues that this claim should be

12   summarily adjudicated in his favor because Plaintiff presented no evidence of a head or neck

13   injury.  This argument is rejected because Plaintiff is not required to prove a physical injury to

14   prevail on an excessive force claim.  Plaintiff testified that he almost passed out from the pain

15   when his head hit the cement overhang.  (Halbert Depo. at 288-89.)  An excessive force claim

16   can be established solely based on unnecessary pain. *See, e.g., Meredith*, 342 F.3d at 1063.  The

17   relevant inquiry is whether the use of force was reasonable under the circumstances. *Robinson*,

18   278 F.3d at 1013-14; Ninth Cir. Model Jury Instr. 9.22.

19          Based on Plaintiff's version of the incident on the stairs, a reasonable jury could conclude

20   that the force used was excessive.  It is undisputed that Plaintiff was already handcuffed behind

21   his back when he was being escorted.  According to Plaintiff, Det. Samoa shoved him into the

22   cement overhang without any provocation, thus rendering any use of force unnecessary.  Under

23   these circumstances, qualified immunity does not apply to shield Defendants from litigation.

24   Det. Samoa's request in his reply brief for summary adjudication of this claim in his favor is

25   therefore denied.

26          Because there is a genuine issue of fact regarding the use of force when Plaintiff was

27   escorted upstairs, and because Plaintiff claims that all Defendants should be held liable, it is

28   necessary to examine each Defendant's involvement in the incident.  Plaintiff does not identify

any Defendant who acted as an integral participant or failed to intercede during the incident on the stairs.  As to Sgt. Davis and Det. Spina, Plaintiff's supervisory liability arguments fail for the reasons discussed with respect to the handcuffing incident.  Therefore, to the extent the jury may find that excessive force was used, the only Defendant who is subject to liability for this claim is Det. Samoa.

To the extent Plaintiff's motion is based on the excessive force claim arising from the incident on the stairs, the motion is **DENIED**.  Det. Samoa's request to summarily adjudicate this claim in his favor is **DENIED**.  There is no genuine issue of fact whether Sgt. Davis, Det. Spina, Det. Rodriguez or Agent Graczyk could be held liable for any use of excessive force in the incident on the stairs.  Accordingly, to the extent their motions seek summary adjudication of this issue, their motions are **GRANTED**.

Fourth, Plaintiff moves for summary adjudication of the claim that his constitutional rights were violated because the was handcuffed for the entire duration of his detention.  Sgt. Davis, Det. Spina and Det. Samoa move for summary adjudication of the same claim in their favor.

While the police may constitutionally detain a building's occupants for the duration of the search, "they do not have unfettered authority to detain [them] in any way they see fit." *Dawson*, 435 F.3d at 1066.  "Because handcuffing substantially aggravates the intrusiveness of a detention, it follows that circumstances which would justify a detention will not necessarily justify a detention by handcuffing." *Meredith*, 342 F.3d at 1063.  Detaining a person in handcuffs during the search is permissible, "but only when justified by the totality of the circumstances." *Tekle*, 511 F.3d at 849; *see also Muehler*, 544 U.S. at 100 ("the duration of detention can, of course, affect the balance of interests under *Graham*").

In *Muehler*, the police were conducting a search for weapons at a known gang member's place of residence.  *See* 544 U.S. at 100.  The officers detained in handcuffs a petite woman, who was not suspected of any wrongdoing, for two to three hours together with three other occupants of the premises.  *Id*. at 100; *see also id.* at 96, 102-03, 105.  The court found that the detention in handcuffs for the duration of the search was constitutionally reasonable.  *Id*. at 100.

1   The decision was based on the law enforcement justifications established in *Summers*, 452 U.S.

2   at 702-03, *i.e.*, preventing flight if incriminating evidence is found, minimizing the risk of harm

3   to the officers and occupants, and facilitating the orderly completion of the search.  *Muehler*, 544

4   U.S. at 98, 99.  In addition, the court noted that the search was considered inherently dangerous,

5   that "the need to detain multiple occupants made the use of handcuffs all the more reasonable,"

6   and that only one or two officers were available to guard the four detainees.  *Id*. at 100.

7           As in *Muehler*, the present case presents an inherently dangerous search.  As in *Muehler*,

8   Plaintiff was detained in handcuffs for the duration of the search even after Defendants

9   established that he had no criminal background and he was not suspected of any wrongdoing.

10   (Davis Depo. at 44-45, 55, 88-89.)  It is undisputed that three occupants were detained and that

11   all three were large men.  (*See* Spina Depo. at 92 (Messrs. Carpenter and Carter were "both

12   pretty good-sized individuals" and "muscular"); Knox Depo. at 42 (Plaintiff was close to the size

13   of Det. Knox, who was 5'10" and weighed 185 lbs., only Plaintiff was heavier).)  Two of the

14   detained men were known to be dangerous criminals.  All three detainees were guarded by Sgt.

15   Davis.  Det. Spina, Det. Samoa and Agent Graczyk were also present, but none of them was

16   available for the entire time.  (*See* Halbert Depo. at 208, 247, 250, 255, 256, 526.)[16]  When

17   Plaintiff complained that the handcuffs were painful, he was re-cuffed in front.  (*Id*. at 250.)

18   Plaintiff does not maintain that the handcuffs caused him any pain after he was re-cuffed.

19           Based on the foregoing, all the considerations which were found relevant in *Muehler* also

20   weigh in favor of finding the handcuffing reasonable in this case.  Accordingly, Plaintiff's

21   Fourth Amendment rights were not violated when he was handcuffed for the entire duration of

22   the search.

23           In the alternative, assuming that Plaintiff's version of the detention in handcuffs were to

24   suffice for a Fourth Amendment violation, Defendants are entitled to qualified immunity.  As of

25   the time of the search, *Muehler* was the most recent Supreme Court decision addressing the issue

26   of detaining occupants in handcuffs.  Based on the facts and holding of *Muehler*, it would be

27   

28           [16]       In his deposition testimony, Plaintiff referred to Det. Spina as the officer with a
camera.  (*See* Halbert Depo. at 256; *cf.* Spina Depo. at 114, 127.)

07cv1607

1  reasonable for an officer to believe that detention in handcuffs was constitutionally permissible

2  in this case.  *See Saucier*, 533 U.S. at 205.

3      Accordingly, to the extent Plaintiff's motion is based on the unreasonableness of his

4  detention because he was handcuffed for the duration of the search, the motion is **DENIED**.  To

5  the extent Defendants' motions seek summary adjudication of this issue, they are **GRANTED**.

6      Last, Plaintiff seeks summary adjudication of the claim that Defendants conspired to

7  violate his constitutional rights.  To prevail on the conspiracy claim, Plaintiff must show "an

8  agreement or meeting of the minds to violate constitutional rights."  *United Steel Workers of Am.*

9  *v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (internal quotation marks and

10  citations omitted).  Plaintiff presents no evidence to suggest that Defendants agreed to violate his

11  constitutional rights.  Accordingly, he has not met his burden as the moving party with respect to

12  an issue on which he will have the burden of proof at trial.  *See C.A.R. Transp. Brokerage Co.*,

13  213 F.3d at 480.  To the extent Plaintiff's motion is based on the claim that Defendants

14  conspired to violate his constitutional rights, it is **DENIED**.  This claim is summarily

15  adjudicated for Defendants.

16      Based on the foregoing, it is hereby **ORDERED** as follows:

17      1. Det. Rodriguez' motion for summary judgment is **DENIED**.  The request in his reply

18  for summary adjudication of issues is **GRANTED IN PART AND DENIED IN PART**.

19      2. Det. Samoa's motion for summary adjudication of issues is **GRANTED**.  The request

20  in his reply for summary judgment is **DENIED**.

21      3. Sgt. Davis and Det. Spina's motion for summary judgment is **GRANTED**.

22      4. Plaintiff's motion for summary judgment or in the alternative partial summary

23  judgment is **DENIED**.

24      **IT IS SO ORDERED**.

25  DATED:  March 30, 2010

26                                          M. James Lorenz
27                                          United States District Court Judge

28  COPY TO:

07cv1607

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

07cv1607